**JOHNSON CONTROLS WORLD SERVICES, INC. (Formerly Pan Am World Services, Inc.), Appellant,**

v.

**H. Lawrence GARRETT, III, Secretary of the Navy, Appellee.**

No. 92–1051.

United States Court of Appeals, Federal Circuit.

Feb. 19, 1993.

Before ARCHER, MICHEL, and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Johnson Controls World Services, Inc. (Johnson Controls) appeals a decision of the Armed Services Board of Contract Appeals (Board), which dismissed its claim for lack of jurisdiction. *Johnson Controls World Services, Inc.*, No. 40233, 1991 WL 150163 (ASBCA July 17, 1991). The Board held that the certifying official, Mr. Donald J. Hatz, did not satisfy either prong of Federal Acquisition Regulation (FAR) 33.-207(c)(2), 48 C.F.R. § 33.207(c)(2)(i) & (ii) (1991). Because Mr. Hatz is an officer having overall responsibility for the conduct of substantially all of the contractor's affairs and one who can bind the corporation in fraud, the Board erred in concluding that Mr. Hatz did not satisfy the second prong of the FAR, 48 C.F.R. § 33.-207(c)(2)(ii). We reverse and remand for adjudication on the merits of the claim.

## I. BACKGROUND

On July 8, 1987, the Navy entered into a contract with United Airline Services Corporation for base operating services at the Naval Submarine Base Bangor, Bremerton, Washington. After several name changes, United Airline Services Corporation eventually became Johnson Controls World Services, Inc., the named appellant in this appeal.[1] On July 19, 1989, Johnson Controls submitted a claim to the contracting officer for an equitable adjustment in the amount of $1,791,800.[2] The claim was certified by Johnson Controls' corporate Secretary and General Counsel, Mr. Donald J. Hatz. The contracting officer denied the claim on December 29, 1989.

Johnson Controls appealed to the Board on January 19, 1990, and on February 28, 1991, the Board *sua sponte* ordered Johnson Controls to "submit evidence to show that Donald D. Hatz met the requirements of FAR 33.207(c)(2)." In response thereto,

Thomas A. Cocciardi, McDonald, Cocciardi & Christman, of Washington D.C., argued, for appellant. With him on the brief, were Harry R. Silver and Davis Wright Tremaine.

Mark D. Rubino, Dept. of Justice, Washington, DC, argued, for appellee. With him on the brief, were Stuart M. Gerson and David M. Cohen.

---

1. The various names used all refer to the same corporate entity, and thus the different names do not affect the instant appeal.

2. At the time the claim was submitted, Johnson Controls was actually named FlightSafety Services Corporation.

Johnson Controls submitted two affidavits: one by Mr. Hatz and one by Mr. Hatz' immediate supervisor, Mr. Thomas J. Stevens, the Vice President of the corporation.

Mr. Hatz stated, *inter alia*, in his affidavit:

3. At the time I certified the Claim, I was an officer and employee of FlightSafety Services Corporation, holding the office of Secretary of the corporation and the position General Counsel. I have previously served as "Contracts Manager" as well, at which time my duties, responsibilities, and authority were substantially the same as at the time of certification of the Claim....

4. In my capacity as Secretary, General Counsel, and Contracts Manager, I had overall responsibility for the conduct of certain affairs of the corporation, as set out in greater detail below.

5. I had actual authority to bind the corporation.

6. I was the officer of the corporation with primary responsibility for all of the corporation's government contracts affairs, including specifically but without limitation its affairs relating to Contract No. N62474–86–D–1400. Government contracts accounted for approximately 95% of FlightSafety Services Corporation's business on an annual dollar volume basis.

7. I had the authority, and in fact actually exercised that authority regularly, to conduct all legal aspects of the corporation's government contracts affairs, including without limitation its affairs with respect to Contract No. N62474–86–D–1400. By way of example and without limitation, I had authority, and regularly exercised the authority, to determine whether the corporation would modify bids or proposals; whether the corporation would propose contract modifications or agree to proposed contract modifications; the terms on which, and parties with which the corporation would enter into subcontracts; and whether the

corporation would submit claims under its contracts. Without limitation, I had and exercised this authority with respect to Contract No. N62474–86–D–1400.

8. My authority as set out in paragraph 7 was not limited to financial matters, but instead extended to all aspects of contract formation and performance.

. . . .

10. In exercising the authority referenced in paragraph 7, I was authorized and empowered by the corporation to act, and regularly did act, independently and without need for review or approval by any other officer or employee of the corporation.

11. I reported directly to Mr. Tom Stevens, who at the time of the Claim was a Vice President of FlightSafety Services Corporation.

Mr. Stevens made similar statements concerning Mr. Hatz' responsibilities in his affidavit. Concerning his own responsibilities, Mr. Stevens additionally asserted that he "was a Vice President of FlightSafety Services Corporation ... [and] the general manager of the corporation."

■ On July 17, 1991, the Board dismissed the appeal without prejudice concluding that Mr. Hatz was not a proper certifying official under either prong of the FAR.[3] With respect to the second prong, which requires that the certifier be "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs," 48 C.F.R. § 33.207(c)(2)(ii), the Board stated:

Mr. Hatz reported to a vice president, who described his role as that of "general manager of the corporation." The vice president, in turn, reported to someone else in the corporation, presumably a president. Although we have not been provided any detail in this regard, appellant concedes that "there was more than one individual superior to Mr. Hatz."

In our view, the vice president's role as "general manager" of the corporation undercuts any claim that Mr. Hatz had

---

**3.** Certification is a jurisdictional prerequisite to consideration of a claim. *Theon v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985).

"overall responsibility for the management of the corporation's affairs in general."

Slip op. at 4 (quoting *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 580 (Fed.Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991)).

On November 6, 1991, Johnson Controls appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(10) (1988) and 41 U.S.C. § 607(g)(1) (1988). Our review is limited by statute:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (1988).

 Whether or not the Board has jurisdiction is a question of law. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992). Because proper certification of a contractor's claim is a jurisdictional prerequisite, *Theon v. United States*, 765 F.2d 1110, 1116 (Fed. Cir.1985), it, too, is a question of law which we review *de novo, see Fruin–Colnon Corp. v. United States,* 912 F.2d 1426, 1429 (Fed.Cir.1990).

## II. ANALYSIS

 The Contract Disputes Act (CDA or Act) states that for claims over $50,000 "the contractor shall certify...." 41 U.S.C. § 605(c)(1). "The statute, being silent on the question of the individual who may certify a claim for a non-individual contractor, leaves a gap." *Grumman*, 927 F.2d at 578. The FAR "fill[s] the gap implicitly left by Congress respecting *who* may certify." *Id.* The FAR provides:

> If the contractor is not an individual, the certification shall be executed by—
>
> (i) A senior company official in charge at the contractor's plant or location involved; or

> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. § 33.207(c)(2).

On appeal, Johnson Controls does not challenge the Board's conclusion with respect to the first prong of the FAR, *i.e.,* that Mr. Hatz is not "[a] senior company official in charge at the contractor's plant or location involved." FAR 33.207(c)(2)(i). The sole issue on appeal then is whether Mr. Hatz satisfies the second prong of the FAR, *i.e.,* whether Mr. Hatz is "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." FAR 33.207(c)(2)(ii).

The Board concluded that Mr. Hatz did not have the requisite authority primarily for two reasons: First, Mr. Hatz reported to the vice president, who in turn reported to someone else in the corporation, and second, the vice president was the general manager of the corporation. Neither of these facts, however, negates Mr. Hatz' overall authority.

 With respect to the former, while corporate reporting relationships are highly relevant to a determination of whether an official is "in charge" as required by the first prong of the FAR, 48 C.F.R. § 33.-207(c)(2)(i), *see Grumman*, 927 F.2d at 580, they are only a factor to be taken into account in determining whether an officer has "overall responsibility" as required by the second prong of the FAR, 48 C.F.R. § 33.207(c)(2)(ii). Even though an officer reports to another individual, he still may have *overall responsibility* for the corporation's affairs. A further inquiry must be made to answer that specific question.

 Likewise, the fact that another officer has overall responsibility, *e.g.,* the Vice President and general manager of the corporation, does not necessarily mean that no other officer additionally has overall responsibility. Clearly, more than one person can have overall responsibility and can qualify under the second prong of the FAR to certify the claim. After all, the regulation does not state that "*the* officer having

overall responsibility" must certify, but instead requires that "[a]n officer having overall responsibility" certify the claim. FAR 33.207(c)(2)(ii). *Cf. Ingalls Shipbuilding, Inc. v. Navy*, 986 F.2d 486, 489 (Fed.Cir.1993) (noting that more than one official may satisfy the requirements of the first prong of the FAR). Once again, a further inquiry into the certifier's actual responsibilities must be made.

Based on our review of the record, we conclude that Mr. Hatz did in fact have overall responsibility, despite the fact that he reported to the Vice President, who was the general manager of the corporation. During oral argument the government admitted that the court has interpretative leeway to determine the meaning of "overall responsibility." Indeed, the court has already exercised such authority with respect to the meaning of "in charge at" in the first prong of the FAR. In *Grumman*, the court concluded that the "in charge at" language requires that "the certifying senior company official have both primary responsibility for the execution of the contract *and* physical presence at the location of the primary contract activity." 927 F.2d at 580. While we decline to state such a blanket rule with respect to the second prong of the FAR and the meaning of "overall responsibility," we can say that Mr. Hatz had the requisite overall responsibility in this case.

Mr. Hatz asserted in his affidavit that he had "primary responsibility for all of the corporation's government contracts affairs" and that "[g]overnment contracts accounted for approximately 95% of [the] ...

Corporation's business." Mr. Hatz indicated that his authority "was not limited to financial matters, but instead extended to all aspects of contract formation and performance" and that he "had actual authority to bind the corporation." The question then becomes whether overall responsibility for 95% of the corporation's affairs is adequate to satisfy the regulatory requirement that the certifier have " 'overall responsibility for the conduct of the contractor's affairs' in general." *Grumman*, 927 F.2d at 580 (quoting FAR 33.207(c)(2)(ii)).

▆ ·While we are tempted to answer that question in the affirmative and end our analysis there, we need not do that in this case. In addition to the fact that Mr. Hatz had overall responsibility for 95% of the corporation's business, he exercised that authority as Secretary and General Counsel of the corporation. Considered together, these three facts demonstrate that Mr. Hatz did have overall responsibility as required by the FAR.[4]

This result is supported by the legislative history of the CDA which indicates that one of the primary purposes of the certification requirement is to "trigger[ ] a contractor's potential liability for a fraudulent claim under section 604 of the Act." *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 685 F.2d 414, 418 n. 11 (1982) (citing *Folk Constr. Co. v. United States*, 226 Ct.Cl. 602, 1981 WL 21438 (order entered January 16, 1981) (citing S.Rep. No. 1118, 95th Cong.2d Sess. 7–8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5241–42)).[5] It is undisputed that Mr. Hatz had authority to bind the contractor.[6]

---

4. We do not mean to imply that either of Mr. Hatz' titles, Secretary or General Counsel, alone suggests requisite authority to certify the claim. In *United States v. Newport News Shipbuilding and Dry Dock, Co.*, 933 F.2d 996 (Fed.Cir.1991), this court held that "certification by a corporate officer, without explanation, necessarily implies that the contractor is representing that he has the requisite 'overall authority,' at least where his title is not inconsistent therewith." *Id.* at 998 n. 2. Neither title in this case, Secretary or General Counsel, necessarily implies such overall authority.

5. See *Ingalls*, 986 F.2d at 491–93 for a detailed explanation of the legislative history of the Act's certification requirement.

6. Indeed, this was the dispositive issue in *Kiewit/Tulsa–Houston v. United States*, 981 F.2d 531 (Fed.Cir.1992). Before considering the language of the FAR itself to determine whether the certifying official was appropriate, the court considered the purpose of the certification requirement and analyzed whether, under the joint venture agreement there involved, the certifier could bind the contractor on the claim as a *statutory* requirement. *Id.* at 533–34. Because that statutory requirement was not met, the court found it unnecessary to further deter-

Thus, because certification by Mr. Hatz fulfills a primary purpose of the certification requirement in the first instance and because of Mr. Hatz' substantial overall responsibility, we conclude that he was qualified to certify the claim under the second prong of the FAR. Accordingly, the Board does have jurisdiction to consider the merits of the claim.

REVERSED and REMANDED.

## COSTS

Each party shall bear its own costs.

mine whether the regulatory requirements were met. *Id.* at 535. The Board in the instant case stated: "Admittedly, Mr. Hatz had general authority to bind the corporation." Op. at 740.