J. Leonard **SPODEK**, Rosalind T. Spodek, Nationwide Postal Management and First Nationwide Postal Holdings, Plaintiffs,

v.

**UNITED STATES, Defendant.**

Nos. 01–82C, 98–594C.

United States Court of Federal Claims.

Dec. 10, 2001.

present case because Mr. Buckley's benefits would arise under the Civil Service Retirement System.

J. Leonard Spodek, Cedarhurst, N.Y., pro se.

Doris S. Finnerman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., and David M. Cohen, Director, Commercial Litigation Branch, for the defendant.

## OPINION

HORN, Judge.

## FINDINGS OF FACT

The plaintiffs, who are proceeding *pro se*, lease buildings to the United States Postal Service (USPS) for use as post offices. The property which is the subject of the above captioned complaint is known as the Schuylkill Station Post Office and is located in Philadelphia, Pennsylvania. The USPS entered into written lease agreements with a predecessor lessor from August 1, 1971 until July 31, 1996. Pursuant to the leases, the USPS paid rent in the amount of $1,516.67 per month (or $18,200.04 per annum). The property was sold to Nationwide Postal Management (Nationwide) on September 14, 1995, during the term of the lease agreement. The USPS remained in occupancy of the Schuylkill Station twenty-five months after the termination of the existing lease, until September 30, 1998. After the expiration of the lease, the USPS paid an increased rental rate of $2,926.00 per month to plaintiffs.

On July 17, 1996, Michael Laverdiere, a contracting officer for the USPS, sent plaintiffs five copies of an unsigned agreement to extend the lease for one year, from August 1, 1996 until July 31, 1997. The extension proposed an annual rent of $90,720.00, or $7,560.00 per month. An accompanying letter requested that plaintiffs sign and return the copies and informed plaintiffs that Mr. Laverdiere would "process the extension as soon as it [the signed copy] is returned to me."

On July 22, 1996, Marcus Nielsen, also a contracting officer for the USPS, sent a letter to plaintiffs advising that the file for the Schuylkill Station had been transferred to Mr. Nielsen. Mr. Nielsen enclosed an unsigned lease extension agreement for a month-to-month occupancy, at an annual rental of $35,112.00, or $2,926.00 per month. Mr. Nielsen also stated: "To the extent any prior negotiations occurred with my preceding contracting officer, any requests for offers or proposals are revoked."

On July 23, 1996, plaintiffs sent to the USPS an executed copy of the lease extension that had been prepared by Mr. Laverdiere. In an accompanying letter, an unsigned copy of which is attached to plaintiffs' complaint, plaintiffs requested that the agreement be executed by the USPS. Then, on November 5, 1996, plaintiffs sent a letter to

Mr. Nielsen requesting payment of $13,902.00, stating: "As per the lease agreement that I [Mr. Spodek] received and accepted." According to the plaintiffs, this amount was the difference between $7,560.00, which plaintiffs claimed they were owed per month, and $2,926.00, which the USPS had paid, for the months of August, September, and October 1996. Plaintiffs also said: "Should you neglect to pay these arrears, I [Mr. Spodek] intend to file a claim before the Board of Contract Appeals."

On November 19, 1996, Mr. Nielsen issued a final decision denying plaintiffs' claim. On December 9, 1996, plaintiffs expressed disagreement with Mr. Nielsen's final decision and requested that either the USPS conclude the agreement plaintiffs alleged was negotiated by Mr. Laverdiere, or forward plaintiffs notice of objection to the contracting officer's final decision to the "Board of Contract Appeals." On December 16, 1996, Mr. Nielsen forwarded plaintiffs' original letter on which the final decision was rendered, the contracting officer's final decision, and the plaintiffs' response to the final decision to the USPS Board of Contract Appeals (Board), which docketed the matter as PSBCA Case No. 4031. On December 19, 1996 the Board docketed the appeal and indicated that under the Board's rules plaintiffs were required to file a complaint with the Board within thirty days after receipt of the Notice of Docketing, "on or about January 21, 1997."

On February 10, 1997, the Board again ordered plaintiffs to file their complaint if they desired to pursue the appeal. The Board established March 3, 1997 as the extended date to file plaintiffs' complaint. On May 28, 1997, the Board issued a show cause order as to why the appeal should not be dismissed for failure to file a complaint. On July 8, 1997, the Board dismissed the appeal, with prejudice, for failure to prosecute. The decision to dismiss the appeal was affirmed by the Board on July 17, 1998, in response to plaintiffs' August 12, 1997 motion for reconsideration. On October 29, 1998, the Board also denied plaintiffs' motion for reconsideration of the Board's denial of reconsideration.[1]

## DISCUSSION

The defendant has filed a motion to dismiss for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, even on appeal. *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States,* 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction); *Schweiger Constr. Co. v. United States,* 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001); *Bowen v. United States,* 49 Fed. Cl. at 675; *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd.*

---

1. In the motion for reconsideration before the Board's denial of reconsideration, plaintiffs were represented by James L. Quarles, III and Kerry Pyle Rubin, Hale & Dorr, LLP, Washington, D.C. The complaint filed in this court was filed on behalf of the plaintiffs by Richard A. Gross of Rosenman & Colin LLP, Washington, D.C. Subsequently, the plaintiffs elected to appear *pro se* in the above captioned case.

*of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Consolidated Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined,* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding on a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001); *Coast Fed. Bank v. United States,* 48 Fed.Cl. 402, 443 (2000); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied sub nom., Cedars–Sinai Med. Ctr. v. O'Leary,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."); *Vanalco v. United States,* 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money dam-

ages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 2279 n. 10, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (2001); *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1372 (Fed.Cir.2001); *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000); *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555–56 (Fed.Cir.1997); *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States*, 249 F.3d at 1372 (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States*, 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States*, 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied, en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009.

This lawsuit is governed by the Contract Disputes Act (CDA) of 1978, which applies to any express or implied contract entered into by an executive agency for the procurement of property, services, construction, alteration, repair or maintenance of real property. 41 U.S.C. § 602 (1994). The CDA provides that a contractor may file an action directly on a claim in the United States Court of Federal Claims, but that action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the con-

tracting officer concerning the claim...." 41 U.S.C. § 609(a)(3) (1994); *see also, D.L. Braughler Co., Inc. v. West,* 127 F.3d 1476, 1480 n. 3 (Fed.Cir.1997); *Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1572 n. 2 (Fed.Cir.1994); *Krueger v. United States,* 26 Cl.Ct. 841, 844 (1992).

## I. The Election Doctrine

■ A contractor makes a binding election to proceed before either the United States Court of Federal Claims or a Board of Contract Appeals, and may not seek relief on the same claim from both adjudicatory fora. *Bonneville Assocs., Ltd. P'ship v. Barram,* 165 F.3d 1360, 1362 (Fed.Cir.1999) (citing *Bonneville Assocs. v. United States,* 43 F.3d 649 (Fed.Cir.1994)). The CDA provides plaintiffs a choice of filing an appeal from a contracting officer's final decision with an agency Board of Contract Appeals, 41 U.S.C. § 606, or the contractor may bring the claim directly in the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1). This election of remedies is irrevocable once a contractor selects a forum in which to bring an appeal. *Evans v. Sec'y. of Dept. of Health and Human Servs.,* 30 Fed.Cl. 709, 711 (1994); *Mark Smith Constr. Co., Inc. v. United States,* 10 Cl.Ct. 540, 542 (1986). Based upon the record before the court, it is clear that the plaintiffs made a binding election of forum when they filed their appeal with the Board.

The election doctrine was summarized in *Mark Smith Construction Company* by the United States Claims Court, the predecessor to this court, as follows:

> Once the fact of an election to appeal the contracting officer's adverse decisions to the Board has been established, our precedent mandates that the only remaining issue is whether that election was "informed, knowing and voluntary." *Prime Construction Co., Inc.,* 231 Ct.Cl. at 782; *Tuttle/White Constructors [v. United States],* [228 Ct.Cl. 354] 656 F.2d [644] at 644 [(1981)]; *National Electric Coil v. United States,* 227 Ct.Cl. 595 [1981 WL 21402] (1981). If so, then the election is binding and we are without jurisdiction. If not, we would naturally proceed to the merits *de novo,* and disregard any action

taken by the Board. In determining whether an election is informed and knowing, this court and our predecessor court have considered a number of related circumstances.

As a general rule, in all such cases, this court has looked first and foremost at whether the plaintiff was ever informed, or was erroneously informed, of his appeal rights pursuant to the CDA. *National Electric Coil,* 227 Ct.Cl. at 597; *Prime Construction,* 231 Ct.Cl. at 783; *Santa Fe Engineers, Inc. v. United States,* 230 Ct. Cl. 512, 677 F.2d 876 (1982); *Beacon Oil Co. v. United States,* 8 Cl.Ct. 695, 698 (1985). Generally, these criteria have been held to be dispositive. However, several additional circumstances surrounding a plaintiff's appeal to the Board have been given varying degrees of consideration. For example, whether the plaintiff filed an actual complaint, or merely a notice of appeal before the Board, *Prime Construction,* 231 Ct.Cl. at 783; *Tuttle/White Constructors,* 656 F.2d at 649 (Kunzig, J., concurring); whether the Board in dismissing the appeal did so without prejudice, *National Electric Coil,* 227 Ct.Cl. at 596–97; *Gregory Lumber Co. v. United States,* 230 Ct.Cl. 745, 748 [1982 WL 25174] (1982); *but cf. Beacon Oil,* 8 Cl.Ct. at 699; and lastly, whether the government consented to dismissal without prejudice or otherwise advised "the board [that] they had no objection to dismissal without prejudice if the board deemed the Court of Claims option was still open...." *Prime Construction,* 231 Ct.Cl. at 783 (citing *National Electric Coil,* 227 Ct.Cl. at 595); *Boyd Lumber Corp. v. United States,* 5 Cl.Ct. 803, 806 (1984). However, *Prime Construction,* 231 Ct.Cl. at 784, teaches that "[t]he view of all our cases being that the notice of appeal to a ... board is such an election ... plaintiff made its election when it filed the notice and is now bound. [T]he lack of any complaint does not establish otherwise."

*Mark Smith Constr. Co., Inc. v. United States,* 10 Cl.Ct. at 544–545.

■ Against this background, plaintiffs' election to file an appeal of the contracting officers's final decision with the Board was

informed and, therefore, binding on the plaintiffs. *See Bonneville Assocs. v. United States,* 43 F.3d at 655. In this case, the contractor received notice of their alternative option to appeal to the Board or this court in the contracting officer's November 19, 1996 final decision, which was sent by means of certified mail with a return receipt requested, and which plaintiffs have not contested they received. The November 19, 1996 contracting officer's final decision, which denied plaintiffs' November 5, 1996 claim, contained the following language:

> For the reasons discussed above, your claim is denied. Pursuant to the Contract Disputes Act of 1978, you may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the Contracting Officer within 90 days from the date you receive this decision. The notice should identify the contract by number or name, reference this decision and indicate that an appeal is intended. Alternately, you may bring an action directly in the United States Court of Federal Claims within 12 months from the date you received this decision.

The language of the contracting officer's final decision regarding the plaintiff's alternative fora in which to appeal is neither vague nor ambiguous, nor do the plaintiffs so argue.

Upon being informed of their appellate rights, plaintiffs requested the contracting officer to forward their response to his final decision to the Board if, according to the plaintiffs, the USPS chose not "to honor the agreement that I [Mr. Spodek] accepted." Pursuant to plaintiffs' request, on December 16, 1996, the contracting officer forwarded the plaintiffs' original claim letter, the contracting officer's final decision, and the plaintiffs' response to the final decision to the Board, which docketed the matter as PSBCA No. 4031. Since mere "notice of appeal" to the PSBCA is a binding election under *Prime Construction Company v. United States,* 231 Ct.Cl. 782, 783, 1982 WL 25226 (1982), the facts can lead to only one finding. *See also Bonneville Assocs. v. United States,* 43 F.3d at 655. The decision by plaintiffs to take their claim to the Board, as opposed to

electing to file directly in this court, resulted in a binding election of forum as a matter of law. Plaintiffs voluntarily, and with knowledge, chose to bring their appeal to the Board. Plaintiffs cannot now bring the same claim in this court.

## II. Statute of Limitations

A contractor must file its appeal in this court within twelve months of the date of receipt of the contracting officer's final decision. 41 U.S.C. § 609(a)(3). *See Borough of Alpine v. United States,* 923 F.2d 170, 172 (Fed.Cir.1991). Plaintiffs' CDA claim is time-barred because the contracting officer's final decision was issued on November 19, 1996, and the complaint in this court was not filed until February 16, 2001. Therefore, the CDA twelve-month statute of limitations provides an independent basis for the dismissal of plaintiffs' complaint. Even if the plaintiffs had not made a binding election of forum in which they chose to challenge the contracting officer's final decision, plaintiffs' claim in this court was time-barred when they filed the instant complaint.

## CONCLUSION

For the foregoing reasons, the court, hereby, **GRANTS** the defendant's motion to dismiss and **DISMISSES** the plaintiffs' complaint.

**IT IS SO ORDERED.**